May it please the Court, Counsel, I am Jay Williams. It is my great pleasure to be here today to discuss the case of Jason Anderson, who asserts that at the discharge hearing held on behalf of the death mute defendant after he was found unfit to stand trial because of difficulty communicating with counsel and because of a lack of understanding of the legal process, the state utterly failed to prove the defendant guilty beyond a reasonable doubt of the offense of arson. The facts of this case that were proved by the state can be very quickly summarized. The first is that the fire marshal testified that the cause of the fire was arson. He testified that no accelerant was used and he concluded that it could not have been an accident and I believe that the language here is notable or careful so this is a direct quote. The fire marshal stated that he was, quote, not able to place anybody at the scene that could have had that circumstance, unquote. For that reason he concluded that it could not have been an accidental start. The other item that the state presented in evidence was a video that starts and what's important about the video is that it shows the defendant who had done this on a number of occasions according to local police. He was known for riding his bike in the neighborhood. He would circle around. He was not in unusual presence by any means in the neighborhood and the defendant was seen on video riding around. There is about a five minute segment where the defendant is not seen on the one main camera. Given his route and as perhaps is explained later, the defendant can be seen for the first 30, 45 seconds of this five minute period and he can be seen on another camera for the final 30, 45 seconds. In between he rides his bicycle into basically what I'm going to call the interior of the neighborhood and because he's not seen, the state maintained a trial and the court found that that was proof of the defendant's guilt because he couldn't be seen at that time. We're in a day and age where we can almost expect that we're going to be seen on a video camera outside and if we do something improper, we can expect to pay the price for that. But this is a case where the defendant is being held accountable because he couldn't be seen at that time. But there are some problems with videotape even in this day and age and one is that it is not as comprehensive as we might normally believe that it is. And what the one particular scene, the only scene in which the defendant is seen inside of this block, what it shows most notably is this, that the defendant actually had to have left the block and wasn't seen by video camera during that time. And the reason that I say that is this. If you envision the start of that video and that's I believe, I don't recall the number of the video, but that video starts on the northeast corner of the map and he proceeds from the northeast, he comes down about halfway and we're talking about an area that is bordered by 18th Street on the west, 19th Street on the east, on the north by 2nd Avenue, on the bottom by 3rd Avenue. This section is divided down the middle from north to south by an alleyway and each of the two sections that it creates is divided east and west by an alleyway that goes from a little bit south of that east to 19th Street. The defendant... You have an alley with two buildings? You have four buildings essentially and an alley that almost has a crisscross intersection but not a corner. Okay, okay. And it's one of these buildings that the fire started? Yes. In the upper right hand quadrant, he starts, he comes down to the first alleyway, he comes over and then we don't see him. When we next see him, we see him coming from west, from left to right, and we see him coming across the site of the fire. The fire actually had to happen a little bit to the east of that. What the state can't explain and what the cameras don't show is how he got to the west of the fire or the fire's origins, given that he never left the block. The only way, according to the state's recitation of the video cameras and to the videos that are shown, that he could have gotten past the situs of the fire to be able to turn around and come back is to have driven to the west across. But all we see is him riding his bike from west to east and there's nothing to show how it is that he got there without leaving the block. The diagram and the exhibit that is presented by the state fails to show how he could have come from the west, having started at the east, without having left the block. That's one of the difficulties that we have with the evidence that's presented, is that it doesn't show that the defendant was within the block. But even if the defendant is presumed to have been within the block for a suitable amount of time, again that there is no showing that it was the defendant who started the fire. The first thing that has to be noted is that cases have consistently shown that mere presence at the fire, mere presence at the scene of any crime, is not proof of involvement in the crime. And in fact, the case law suggests that the mere fact of a fire is not sufficient to prove that arson occurred. Here, there is no ability of the state to prove that the defendant or anybody committed the fire because the fire marshal was not able to say what the source of the fire was or what the cause of the fire was. But more specifically, there is no showing that the defendant himself committed the act and started the fire. There was discussion of a hole in a boarded up plywood or something, is that right? Yes. That cats lived in, feral cats lived in. But was there testimony that no one could get into that, a human being so to speak? There was testimony that nobody could get into that. There was also testimony, however, that demonstrated that people could get to that site without being seen by the camera. Is there any testimony that that is the situs of the fire? The one thing that suggests it's the situs of the fire is the pattern of char that was observed. So there is some fire expert that would suggest that the origin and the site of that fire would have been there? Yes. But no testimony as to the cause. And that's the difficulty, is that there is no presumption in the law that just because there's a fire that it's arson. And there's no presumption in the law that just because there's a fire that it was caused by human agency. The fire marshal eliminated other causes. What we have here is a fella doesn't like cats and he was harassing cats, right? Well, that was the assumption by the trial judge. But I don't know that the evidence demonstrates that in fact he was harassing the cats. It looks as if he's with the cat more than he actually is because of the fact that it's shown on seven different cameras, four of which are all the same scene just from different angles. There's a brief time where he pulls over, he sees a cat, and then there's a time where he's driving in the same distance or in the same direction. But for the most part, the riding of his bike is leisurely. It is not a full-on pursuit of the cat. Even if somehow the defendant went back to the cat, and while the judge found at trial that there was something to him that indicated that he was harassing the cats, the judge backed off of that later and said, well, I don't think that he necessarily lit the match so as to set the cats on fire. I think he probably lit a match so that he could look at the cats. But this is pure speculation. In part, I say that because he had a bicycle with a light that was, from all descriptions, at about the same height as would be needed to look into the hole that's carved in the back of the old Mississippi Cafe building. The fact that the defendant went there and was looking at cats, first of all, again, he could have used a light. Second, there's no showing that he had matches or that he used matches. And third, and this is where the judge makes an incorrect legal determination, it is not the mere striking of a match that constitutes the act of arson. It is the placement of that match against a substance that is going to start a fire. The Second District in People v. Bauer said, in that case, wasn't the striking of the offensive arson, it was throwing it onto an accelerant. And was there evidence in that case of matches? There was evidence in that case of matches. More importantly, there was evidence of accelerant. No, I think very important in this case is what's the evidence of matches? Oh, here there's no evidence. Thank you. I'm sorry. That's the key distinction, isn't it? There's no evidence of matches. There's no evidence of accelerant. And accelerant seems to be the dividing line in the case law as to whether an act is considered intentional or knowingly committed or not. And here we don't have the presence of accelerant. And when I say in almost every case, I believe in the cases cited by defendants. That's simply because a match inherently has more than one function than the ignition of something else. Yes. It also shows that it's... Matches are used to make light. Matches are used to make light. And the mere striking of a match... That's the reason you've got to have match plus. Correct. And the plus is something in... I believe it was Haines cited by the state as one of its underlying cases. The only case that did not involve an accelerant that was cited by the state was one where it was found that a lamp with a hot bulb was placed next to combustible material. So, again, that's your match plus there is knowing of the combustible material and specifically setting it in that fashion. Otherwise, it's almost always accelerant because accelerant shows that it was done purposefully and the person knew that putting the match to the accelerant was going to cause the fire. Here, the fire marshal conceded that had somebody simply thrown a cigarette butt, had somebody simply lit a match, extinguished it, thrown it out, that that was not going to be sufficient to prove arson. But he concluded that he couldn't find that there was anybody there that would have fit that circumstance, as he put it. We respectfully submit that to the extent that the fire marshal couldn't find somebody who fit the circumstance for being accidental, the fire marshal also couldn't find anybody who fit the circumstance of having to do it intentionally. And another indication of intention or doing something knowingly that is found within the cases is where there's motive that exists. The state may say that motive isn't necessary to prove the offense and it was noted at trial as well that it wasn't necessary to prove the offense. But the courts seem to work awfully hard to find an explanation for it. And that's what we're looking for with motive, is why would somebody do this? Again, I submit that an interest in cats, whether peculiar or not, is not sufficient to constitute a motive for setting fire to a building. Just as cases have found that somebody being thrown out of a party wasn't a sufficient motive for that person to have started a fire or committed arson, that was Gugliotta, there are other cases in which the motive simply isn't found to be enough. Where there is sufficient motive, as in the cases where a defendant owed $100,000 or another one owed $300,000, that is where, and they destroyed their own buildings for the insurance money, where there's that kind of motive, then there's more consideration for the fire having been intentional or knowingly started. Here there was no motive that was demonstrated or that could be shown as to why the defendant would have done this intentional act, if in fact it was the defendant who started the fire at all. And if indeed it is a person who started the fire, and there is no showing of any of those factors, thus the state has failed to meet its burden beyond a reasonable doubt. The fire marshal's rationale was that he couldn't explain this being anything else. And he said, we often prove this by the process of elimination. And in many ways that's exactly what the trial judge in this case did. But this is not, our system is not one where it's simply a process of elimination, well it must be somebody else. The trial judge said it had to be somebody and we can't pin it on anybody else. So we got pinned on Jason Anderson in this case. But again, our system requires more than that. It requires proof beyond a reasonable doubt that the defendant committed this act. That proof was not met in this case. And therefore the defendant requests that this honorable court reverses conviction and enter a judgment of acquittal. Thank you. May it please the court. Johnson. Defendant argues that people did not prove him to be not guilty of arson beyond a reasonable doubt. There was extensive testimony at the discharge hearing and video clips from many different locations showed everyone who had been in the area surrounding the old Mississippi Cafe building prior to the fire. The video clips show the defendant entered the alley just before the fire started and that no one but the defendant entered from either end of the alley just prior to the time the fire became visible. The defendant had been missing on the videos for about five minutes about the time the fire was believed to have started. But didn't the fire marshal say that he could not pinpoint a time when the fire started? No, the videos and such showed an approximate time. He couldn't give an exact time that the fire. But there was a time frame of about eight minutes in which the fire would have started. That was shown by the videos. Now, Raymond Berger owned the building. Who did? I'm sorry? I'm sorry, you said who owned the building? Raymond Berger. I thought you said Raymond Burr. Not this time. Okay. But he purchased the building for the purpose of demolishing it and turning it into a parking lot. The building had been vacant for many years and was structurally unstable, so Berger hired a demolition contractor and the contractor stabilized the structure so that they could then demolish it by hand rather than using the large machines that they would normally use. The fire occurred on a Saturday morning, very early in the morning, and the demolition was scheduled to begin the following Monday. Berger had been in the building on the Friday evening prior to the fire, and he had secured the building at between 530 and 6 p.m. Berger had insurance, so he didn't take a loss on the building from the fire, however, the fire upset his compaction estimates and required more preparation for the planned parking lot in terms of stabilizing the soil and such. Bruce Scott testified that he worked at the bar, MD Greens I believe it is, across the alley from the building, and he fed cats through the hole in the alley door on the morning of the fire. There was no sign of the fire at 3.30 a.m. when he picked up the feeding bowl that he had left for the cats, and soon after Scott finished his work, he left work at about 4 a.m. He learned of the fire and he and his girlfriend watched briefly from about 18th Street I believe it was. Scott testified that he had seen a bicyclist in the area of the fire around 4 a.m. about 10 minutes before going back to view the fire. The Rock Island Fire Marshal, Greg Marty, testified that after the fire, all the doors to the building were intact and in their original position. The only access to the building was through the known hole in the alley door on the north wall which allowed the cats to access the building. Marty said that no materials were on the second or third floors of the building, but substantial amounts of combustible materials were blocking the interior of the alley door. Cooking equipment had been removed. The utilities had been disconnected many years before, and Marty ruled out weather and natural events as causes of the fire. Marty testified that this was an incendiary fire, meaning that it was an intentionally set fire. Marty determined that the fire originated just inside the alley door, and he said the likely source of the fire was an open flame introduced to the combustibles at the door.    The fire was lit because it was a fire with no natural cause, so they were dried papers, dried wood, wouldn't need an accelerant. You light a match, those things go up. Marty did not believe it was possible that the fire was set accidentally. The people stand on our brief for all argument in this case, and we ask this court to affirm the trial judge's finding that the defendant is not guilty of arson. Does the court have any other questions? Thank you, Mr. Austin. Briefly, although I'm certainly happy to answer any questions that might come up, but in answer to a question posed by Justice O'Brien, we know when the fire was first noticed, so to that extent we can create a little bit of a timeline, but you're correct that we don't know how long it took for the fire to get to the stage that it got to where it was noticed. And that's one of the difficulties here, and it's another difficulty of the videos that are shown, because none of them are shown according to the same standard. We have some that are off by an hour, some that are off by a half hour, some that are off by two minutes. Sometimes we know that they're fast or they're slow, and sometimes we don't. And so it is difficult to say exactly when it is the fire started. And given that there wasn't an accelerant, a fair presumption is that it didn't start at an accelerated pace. And so it could have been a period of time, even before the defendant was within the neighborhood, that the fire was started. How long from the identification of the defendant until his arrest? I don't know when he was identified. I know that he wasn't arrested for two weeks after the fire. How long it took for the police to look through the video and to formulate him as a defendant, I don't know how long the period was, except I know it wasn't more than two weeks. It's also unfair or it's not accurate to say that there couldn't have been anybody else within the area who could have done this. One notable person who could easily be a suspect was another person on a bike. That bike had a trailer. And what was in the trailer, we don't know. We see the biker driving past at about this time, and then we don't see him. The biker driving, was it a bicycle or a motorcycle? It was a bicycle. It was a bicycle. Riding on it? Yes. Riding on it. And I don't recall if it was a recumbent bike or an upright bike, but it had a trailer behind it, and there were obvious items within the trailer. And I say obvious, you could tell something was there, but we don't know what it was. The other thing is that, again, while the defendant wasn't seen, there were people who had access, and, in fact, the bartender said he was in the alley and he was at the place where the cats are because he was feeding the cats. And what this demonstrates is that people were able to get back there and not be seen on camera. The only reason that the police know that the bartender was back there is because he said he was. The fact that somebody could get to within that area and not be seen on camera, again, creates a further difficulty for the state to say that the fact that the defendant was not seen but was near the area means that he, of necessity, must have done it. And, again, finally, while the fire marshal says that the fire was intentional because that's part of his definition of incendiary, he can't say how it was that it started. Just that however it started, it must have been by somebody who did it intentionally and not accidentally, although he conceded that it could have been accidental except he didn't think that there were any people within that area who would have qualified as somebody having acted accidentally. But, again, the judge alluded to the fact that it well could have been accidental because maybe he just did it to see the cats. And the judge didn't go so far as to say that it must have then been done intentionally because the judge's definition of intentional and legally culpable here is that he simply struck the match. But as we've discussed, it takes much more than that to constitute the offense of arson. Because those steps were not proved, the defendant again requests that this Honorable Court  Thank you.